IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. _____ |
| | ) |
| LAWTON SHOEMAKE, JERRY SHOEMAKE, | ) |
| SANDRA SHOEMAKE, AND LANDMARK | ) |
| AMERICAN INSURANCE COMPANY | ) |
| A/S/O PARTHENON PROPERTIES, INC., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Comes now Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), by and through counsel, and for its Complaint, states as follows:

1. Auto-Owners is a Michigan corporation licensed to transact business in the state of Tennessee. Auto-Owners' principal place of business is located in Lansing, Michigan.

2. Defendant Lawton Shoemake ("Shoemake") is a citizen and resident of the state of Tennessee. He may be served with process and a copy of this Complaint at 255 Pebble Glen Drive, Franklin, Tennessee 37064-2949.

3. Defendants Jerry and Sandra Shoemake (the "Named Insureds") are citizens and residents of the state of Tennessee. They may be served with process and a copy of this Complaint at 255 Pebble Glen Drive, Franklin, Tennessee 37064-2949.

4. Defendant Landmark American Insurance Company a/s/o Parthenon Properties, Inc., ("Landmark American") is an Oklahoma corporation with its principal place of business located in Atlanta, Georgia. It may be served with process and a copy of this Complaint through

its registered agent The Corporation Company, 1833 S. Morgan Road, Oklahoma City, Oklahoma 73128.

## I. JURISDICTION AND VENUE

5. This action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101 *et seq*. Auto-Owners also brings this action pursuant to Tennessee law of unjust enrichment, quasi contract, and implied contract.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this claim occurred in the Eastern District of Tennessee.

7. This Court has personal jurisdiction over Shoemake and the Named Insureds as they are found in Tennessee. At the time of the incident at issue in this matter, Shoemake was a resident of Hamilton County, Tennessee, in the Eastern District of Tennessee.

8. This Court has personal jurisdiction over Landmark American under Tenn. Code Ann. § 20-2-214(a)(1) & (4) and § 20-2-223(a)(1) & (6) as Landmark American has transacted business in Tennessee and entered into a contract of insurance covering property located within Tennessee.

9. Auto-Owners seeks a declaratory judgment concerning its rights and obligations under a policy of insurance issued to the Named Insureds.

10. This action concerns an actual case and controversy over whether Auto-Owners has a duty to defend or indemnify Shoemake in an underlying lawsuit pursuant to a policy of insurance issued to the Named Insureds.

11. The underlying lawsuit is a federal court action filed in the United States District Court for the Eastern District of Tennessee, Southern Division.

12. The underlying lawsuit is not a state court action.

13. The underlying lawsuit is *Landmark American Insurance Company a/s/o Parthenon Properties, Inc. v. Cameron Druyor and Lawton Shoemake*, United States District Court, Eastern District of Tennessee, No. 1:15-CV-113-HSM-SKL (the "Action").

14. A copy of the complaint filed in the Action is attached hereto as **Exhibit 1** and is incorporated by referenced into this Complaint.

15. The Action involves claims of negligence and breach of contract against Shoemake.

16. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

17. Plaintiff is a citizen and resident of Michigan. Defendants are citizens and residents of Oklahoma, Georgia, and Tennessee. As a result, complete diversity of citizenship exists.

18. In this case, Auto-Owners seeks a declaration that it has no duty to defend Shoemake in the Action brought against him by Landmark American.

19. In this case, Auto-Owners seeks a declaration that it has no duty to indemnify Shoemake for any judgment that may be obtained against him in the Action brought against him by Landmark American.

20. In this action, Auto-Owners seeks a declaration that the insurance policy issued by Auto-Owners to the Named Insureds does not provide coverage for the claims made by Landmark American in the Action against Shoemake.

21. The complaint filed in the action seeks to recover $309,081.57 from Shoemake. *See Exhibit 1*, ¶ 40.

22. Based on the specific amount requested in the Complaint filed in the Action, the amount in controversy requirement is satisfied.

23. Based on the allegations contained in the complaint filed in the Action, the amount in controversy in this case is, at a minimum, in excess of $309,081.57.

24. The policy limit for each occurrence under the personal liability protection in the insurance policy issued by Auto-Owners to the Named Insureds is $500,000.00.

25. The policy limit exceeds the amount in controversy requirement of $75,000.00 necessary for this Court to exercise jurisdiction of this matter.

26. The amount in controversy in this action exceeds the sum of value of $75,000.00 exclusive of interest and costs.

## II. SPECIFIC ALLEGATIONS

27. The insurance policy issued by Auto-Owners to the Named Insureds is a homeowner's policy that includes personal liability coverage (the "Policy").

28. The policy number for the Policy is 44-375-804-03.

29. The Policy was issued to the Named Insureds at 255 Pebble Glen Drive, Franklin, Tennessee 37064-2949.

30. The insured location for the Policy is 2305 Mann Road, Lebanon, Tennessee 37087-0933.

31. The Policy has an effective date of March 27, 2013 to March 27, 2014.

32. A certified copy of the Policy is attached hereto as *Exhibit 2* and is incorporated herein by reference into this Complaint.

33. The Policy contains the following language as part of the insuring agreement:

## INSURING AGREEMENT

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage** and **personal injury** which occur during the policy term shown in the Declarations.

## DEFINITIONS

5. **Insured** means:

    a. **you**;

    b. **your relatives**; and

    c. any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**

6. **Insured premises** means:

    a. the **residence premises**;

    e. any part of a premises not owned by any **insured** but where any **insured** may be temporarily residing;

11. **Property damage** means damage to or destruction of tangible property including resulting loss of use of that property.

13. **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**.

15. **Residence premises** means:

    a. the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or

    b. that part of any other building where **you** reside, including grounds and structures;

    which is described in the Declarations.

17. **You** or **your** means the first named insured shown in the Declarations and if an individual, **your** spouse who resides in the same household.

## SECTION II – PERSONAL LIABILITY PROTECTION

1. **COVERAGES**

   a. **Coverage E – Personal Liability**

   **(1)** **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

   **We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our** choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

2. **EXCLUSIONS**

   a. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply:

   **(1)** to **bodily injury**, **property damage** or **personal injury** arising out of any premises owned, rented or controlled by any **insured** which is not an **insured premises**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured** at such premises.

   **(10)** to **bodily injury** or **property damage** because of or arising out of the rendering of or failure to render professional services of any kind.

   **(12)** to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.

34. Based on the report of the Chattanooga Fire Department, which is attached as *Exhibit 3*, the fire at issue in this matter was reported to the Chattanooga Fire Department at 3:05:29 a.m. on March 27, 2013.

35. Upon information and belief, the fire at issue occurred after 12:01 a.m. on March 27, 2013.

36. As a result, the Policy in effect from March 27, 2013 to March 27, 2014 is the applicable insurance policy for this action.

37. In the alternative and if the insurance policy in effect from March 27, 2012 to March 27, 2013, is deemed to be applicable insurance policy, a certified copy of the insurance policy in effect from March 27, 2012 to March 27, 2013, is attached as ***Exhibit 4***. It contains the same applicable terms as referenced above in Paragraph 33.

38. Auto-Owners submits that the same analysis as set forth herein applies regardless of whether the March 27, 2012 to March 27, 2013 insurance policy applies or the March 27, 2013 to March 27, 2014 insurance policy applies.

39. For ease of reference, the term "Policy" as used hereinafter in this Complaint applies equally to the March 27, 2012 to March 27, 2013 policy (***Exhibit 4***) and the March 27, 2013 to March 27, 2014 policy (***Exhibit 2***).

40. This case arises out of the Action filed in the United States District Court for the Eastern District of Tennessee, on or about May 7, 2015.

41. Upon information and belief, the complaint in the Action was served upon Shoemake on or about June 4, 2015.

42. The complaint filed in the Action alleges that Landmark American insured the business and personal property owned by Parthenon Properties, Inc. ("Parthenon"), Bluff View at Mountain Creek Apartments, located at 701 Morrison Springs Road in Chattanooga, Hamilton County, Tennessee. *See **Exhibit 1***, ¶ 3.

43. The complaint filed in the Action alleges that non-party Cameron Druyor ("Druyor") and Shoemake were tenants of Unit 128 of the Bluff View Apartments that were owned by Parthenon. *See **Exhibit 1***, ¶¶ 5, 7.

7

3316023.3
Case 1:15-cv-00297-HSM-SKL   Document 1   Filed 10/30/15   Page 7 of 17   PageID #: 7

44. Upon investigation based upon the Chattanooga Fire Department's report, the address of the apartments may have been 758 Cherished View Drive.

45. The complaint filed in the Action alleges that the underlying federal court lawsuit was filed for property damage arising out of a fire (the "Fire") that damaged the Bluff View Apartments owned by Parthenon that occurred on March 27, 2013. *See Exhibit 1*, ¶ 11.

46. The complaint filed in the Action alleges that the Fire occurred at Unit 128 of Bluff View Apartments owned by Parthenon. *See Exhibit 1*, ¶ 12.

47. The complaint filed in the Action alleges that Shoemake and Druyor were tenants of Unit 128 of Bluff View Apartments owned by Parthenon. *See Exhibit 1*, ¶ 13.

48. The complaint filed in the Action alleges that Druyor and Shoemake modified the wiring in Unit 128 of Bluff View Apartments and improperly installed a garbage disposal in Unit 128. *See Exhibit 1*, ¶ 14.

49. The complaint filed in the Action alleges that Druyor and Shoemake improperly reconfigured the plumbing and electrical wires in the kitchen of Unit 128. *See Exhibit 1*, ¶ 15.

50. The complaint filed in the Action alleges that Druyor and Shoemake were previously advised that tenants are not allowed to make any rewiring in Bluff View Apartments and that it is a direct violation of the lease agreement. *See Exhibit 1*, ¶ 16.

51. The complaint filed in the Action includes as Exhibit A, a copy of the lease agreement allegedly signed by Druyor and Shoemake. *See Exhibit 1*, ¶ 16 and Exhibit A thereto.

52. The complaint filed in the Action alleges that the Fire occurred shortly after Parthenon found out about the improper installation and modification of the wiring system in Unit 128. *See Exhibit 1*, ¶ 17.

53. The complaint filed in the Action alleges that Druyor and Shoemake failed to follow the guidelines set by the lease agreement for the lease of Unit 128. *See **Exhibit 1***, ¶ 18.

54. The complaint filed in the Action alleges that as a result of the Fire Parthenon sustained damage in the approximate amount of $309,081.57. *See **Exhibit 1***, ¶ 19.

55. The complaint filed in the Action alleges that as a direct and proximate cause of the actions of Shoemake and Druyor, Parthenon suffered losses for which Landmark American, pursuant to the terms and conditions of its insurance policy, paid an amount equal to $309.081.57. *See **Exhibit 1***, ¶ 20.

56. The complaint filed in the Action alleges that by reason of the payment made by Landmark American and pursuant to the terms and conditions of the insurance policy issued by Landmark American, as well as by operation of law and equity, Landmark American is subrogated to Parthenon's rights of recovery to the extent of the payment made. *See **Exhibit 1***, ¶ 21.

57. The complaint filed in the Action alleges that Landmark American is therefore entitled to have and recover from Druyor and Shoemake its damages resulting from their alleged liability. *See **Exhibit 1***, ¶ 22.

58. The complaint filed in the Action brings a claim of negligence against Shoemake. *See **Exhibit 1***, ¶¶ 31-33.

59. The complaint filed in the Action alleges that Shoemake undertook the responsibility of following the guidelines set forth in the lease agreement by signing the lease agreement and by living in Unit 128 of Bluff View Apartments. *See **Exhibit 1***, ¶ 31.

60. The complaint filed in the Action alleges that Shoemake breached his duty by committing negligent and/or grossly negligent acts of commission and/or omission by allegedly:

9

(a) improperly installing the wiring system in Unit 128 of the Bluff View Apartments; (b) modifying the wiring system in Unit 128 of Bluff View Apartments; (c) failing to comply with the lease agreement; (d) failing to hire competent experts, agents, servants, and contractors to perform installation and/or modification of the wiring system in Unit 128 of Bluff View Apartments; (e) failing to contact Parthenon prior to making any improper installation and/or modification of the wiring system; and (f) failing to exercise the requisite degree of care and skill under the circumstances. *See **Exhibit 1**,* ¶ 32.

61. The complaint filed in the Action alleges that as a direct and proximate result of the alleged negligent and/or gross negligent acts by Shoemake, Landmark American has suffered damages in the amount of $309,081.57. *See **Exhibit 1**,* ¶ 33.

62. The complaint filed in the Action brings a claim of breach of contract against Shoemake. *See **Exhibit 1**,* ¶¶ 34-38.

63. The complaint filed in the Action alleges that there was a valid and enforceable lease agreement contract between Parthenon and Shoemake. *See **Exhibit 1**,* ¶ 34 and Exhibit A thereto.

64. The complaint filed in the Action alleges that the lease agreement, paragraph 25, clearly prohibits any electrical alteration of Unit 128 of Bluff View Apartments. *See **Exhibit 1**,* ¶ 35 and Exhibit A thereto.

65. The complaint filed in the Action alleges that Shoemake had a duty to refrain himself from making any electrical alteration of Unit 128 of Bluff View Apartments. *See **Exhibit 1**,* ¶ 36.

66. The complaint filed in the Action alleges that Shoemake breached the lease agreement by failing to refrain himself from making any electrical alterations to Unit 128 of Bluff View Apartments. *See Exhibit 1*, ¶ 37.

67. The complaint filed in the Action alleges that as a direct and proximate cause of Shoemake's alleged breach of the lease agreement, Landmark American has suffered damages in excess of $309,081.57. *See Exhibit 1*, ¶ 38.

68. After the complaint in the Action was served upon Shoemake, Auto-Owners learned that, at the time of the Fire, Shoemake was twenty-five years old and was residing in the apartment full time while attending graduate school in Chattanooga.

69. Shoemake requested that Auto-Owners provide a defense to him in the Action.

70. Auto-Owners agreed to provide Shoemake with a defense in the Action subject to reservation of rights, which included the right to file a declaratory judgment action to determine whether coverage existed under the Policy for the claims in the Action.

71. The claims brought by Landmark American in the Action against Shoemake are not within the scope of coverage of the Policy.

72. Shoemake is not the named insured on the Policy.

73. Shoemake does not meet the definition of an insured as that term is defined in the Policy.

74. To qualify as an insured under the Policy, Shoemake must meet the definition of a relative as that term is defined in the Policy.

75. The Policy defines relative to mean "a person who resides with you and who is related to you by blood, marriage, or adoption. Relative includes a ward or foster child who resides with you."

76. In order to satisfy the definition of relative at that term is defined in the Policy, Shoemake must be related to the Named Insureds by blood, marriage, or adoption and he must also reside with them at the time of the Fire.

77. Shoemake did not reside with the Named Insureds.

78. Shoemake did not reside with the Named Insureds at the time of the Fire.

79. Because Shoemake does not meet the definition of a relative under the Policy, he is not an insured under the Policy.

80. Because Shoemake is not an insured under the Policy, the Policy does not provide coverage to him for the claims made against him in the Action.

81. The Policy contains an exclusion in the personal liability coverage that provides that personal liability coverage does not apply to "bodily injury, property damage, or personal injury arising out of any premises owned, rented, or controlled by any insured which is not an insured premises. This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of employment by any insured at such premises."

82. The apartment rented by Shoemake, Unit 128 at the Bluff View Apartments, does not meet the definition of an insured premises as that term is defined in the Policy.

83. The complaint filed in the Action and the lease attached as Exhibit A thereto indicate that Shoemake had leased Unit 128 for a full year from June 22, 2012 to June 30, 2013.

84. Upon information and belief, Shoemake was residing at Apartment 128 full time.

85. Upon information and belief, Shoemake was not residing in Apartment 128 temporarily.

86. As Shoemake was not residing in Unit 128 temporarily, Unit 128 does not meet the definition of an insured premises.

3316023.3
Case 1:15-cv-00297-HSM-SKL   Document 1   Filed 10/30/15   Page 12 of 17   PageID #: 12

87. The exclusion applies so that personal liability coverage in the Policy does not apply to claims of property damage that arise out of any premises rented by any insured which is not an insured premises.

88. As a result, even if Shoemake is considered an insured, the Policy does not provide coverage for the claims made against him in the Action due to the exclusion.

89. The Policy excludes coverage for property damage arising out of the rendering or failure to render professional services of any kind.

90. The Complaint filed in the Action alleges that Shoemake (a) improperly installed the wiring system in Unit 128 of the Bluff View Apartments; (b) modified the wiring system in Unit 128 of Bluff View Apartments; (c) failed to hire competent experts, agents, servants, and contractors to perform installation and/or modification of the wiring system in Unit 128 of Bluff View Apartments; and (d) failed to exercise the requisite degree of care and skill under the circumstances.

91. These allegations indicate that the work allegedly performed required a requisite degree of skill and should have been performed by competent experts or contractors. Instead, Shoemake allegedly undertook such professional services by himself.

92. The Policy excludes coverage for property damage arising out of the rendering or failure to render professional services, and thus excludes coverage for the claims made against Shoemake that arise out of the alleged failure of his work on the wiring and plumbing system of Unit 128.

93. The Policy excludes coverage for property damage reasonably expected or intended by the insured. This exclusion applies even if the property damage is of a different kind

13

or degree or is sustained by a different person or property, than that reasonably expected or intended.

94. The complaint in the Action alleges that Mr. Shoemake's acts were grossly negligent acts of commission.

95. To the extent the claims for property damage in the Action arise out of acts through which property damage was expected or intended, the Policy does not provide coverage for such claims.

96. As a result, the Policy does not provide coverage for the claims in the Action brought against Shoemake.

97. Auto-Owners does not have duty under the Policy to defend Shoemake in the Action.

98. Auto-Owners does not have a duty under the Policy to indemnify Shoemake for any judgment entered against him in the Action.

99. The terms of the Policy and the exclusions contained therein exclude coverage for the claims brought against Shoemake in the Action.

100. The reservation of rights letter sent by Auto-Owners to Shoemake specifically advised Shoemake of Auto-Owners' reservation of its right to claim reimbursement of liability defense attorney's fees and costs expended in defending him in the Action incurred fourteen days after the date of the reservation of rights letter.

101. Auto-Owners provided timely, specific, and adequate notice to Shoemake that it would seek reimbursement of the costs and fees it incurred in defending him in the Action if a determination was made that Auto-Owners had no duty to defend him.

14

3316023.3
Case 1:15-cv-00297-HSM-SKL   Document 1   Filed 10/30/15   Page 14 of 17   PageID #: 14

102. Shoemake has been unjustly enriched through the receipt of legal defense services provided by Auto-Owners to which he is not entitled under the Policy.

103. Shoemake has received and is receiving a benefit from Auto-Owners in the form of a legal defense to the claims in the Action.

104. Shoemake has appreciated the benefit provided by Auto-Owners by utilizing the defense provided by Auto-Owners subject to a reservation of rights to defend himself in the Action.

105. Under the circumstances and with Auto-Owners' specific reservation of its right to recover attorneys fees and legal defense costs it has expended and is expending on Shoemake's behalf, it would be inequitable for Shoemake to retain the benefit of the defense without payment of the value of that defense.

106. Shoemake is a proper party to this action because he is claiming to be an insured under the Policy and this action will determine whether he has insurance coverage under the Policy to provide a defense and/or indemnity for him in the action.

107. The Named Insureds are proper parties to this declaratory judgment action because they are the named insureds on the Policy, and this action will determine where there is insurance coverage to provide any defense or indemnity for Shoemake.

108. Landmark American is a proper party to this declaratory judgment action because it is a named plaintiff in the Action and has an interest in whether Shoemake has insurance coverage to provide an indemnity for any judgment that may be obtained against him in the Action.

109. The defendants in this action are proper parties to this case pursuant to Tenn. Code Ann. § 29-14-107.

110. Neither Auto-Owners nor any of the defendants in this declaratory judgment action have sought, by any other legal action, to have their respective rights under the Policy at issue adjudicated under the facts and circumstances presented herein.

111. In addition to declaratory relief, Auto-Owners demands judgment against Shoemake for unjust enrichment in an amount equal to all liability defense attorney's fees and costs incurred by Auto-Owners on Shoemake's behalf from July 28, 2015 through the date of judgment in this lawsuit.

112. Auto-Owners seeks reimbursement of the liability defense attorney's fees and costs it incurred on Shoemake's behalf from July 28, 2015 through the date of judgment in this lawsuit on the legal theories of unjust enrichment, quasi contract, and implied contract in an amount to be determined.

WHEREFORE, Auto-Owners prays:

A. That service of process be issued and served upon the Defendants listed above;

B. That this Court enter an order declaring that Auto-Owners does not have any duty or obligation under the Policy, either *Exhibit 2* or *Exhibit 4* as determined applicable, to defend Lawton Shoemake for the claims brought against him in the civil action styled *Landmark American Insurance Company a/s/o Parthenon Properties, Inc. v. Cameron Druyor and Lawton Shoemake*, United States District Court, Eastern District of Tennessee, No. 1:15-CV-113-HSM-SKL;

C. That this Court enter an order declaring that Auto-Owners does not have any duty or obligation under the Policy, either *Exhibit 2* or *Exhibit 4* as determined applicable, to indemnify Lawton Shoemake for any judgment that may be entered against him in the civil action styled *Landmark American Insurance Company a/s/o Parthenon Properties, Inc. v.*

16

3316023.3
Case 1:15-cv-00297-HSM-SKL   Document 1   Filed 10/30/15   Page 16 of 17   PageID #: 16

*Cameron Druyor and Lawton Shoemake*, United States District Court, Eastern District of Tennessee, No. 1:15-CV-113-HSM-SKL;

D.  That this Court declare that the Policy, either **Exhibit 2** or **Exhibit 4** as determined applicable, does not provide coverage to Lawton Shoemake for the claims made against him in the civil action styled *Landmark American Insurance Company a/s/o Parthenon Properties, Inc. v. Cameron Druyor and Lawton Shoemake*, United States District Court, Eastern District of Tennessee, No. 1:15-CV-113-HSM-SKL;

E.  That this Court enter judgment in favor of Auto-Owners and against Lawton Shoemake in an amount to be determined and equal to all liability defense attorney's fees and costs expended by Auto-Owners in defending Lawton Shoemake in the Action from July 28, 2015 through the date of judgment in this lawsuit; and

E.  For such other relief as the Court deems equitable and necessary under the circumstances.

Respectfully submitted this 30th day of October, 2015.

>
> WOOLF, McCLANE, BRIGHT,
>   ALLEN & CARPENTER, PLLC
>
> By   *s/*Dean T. Howell
>      Howard E. Jarvis, BPR No. 006673
>      jarvish@wmbac.com
>      Dean T. Howell, BPR No. 022130
>      dhowell@wmbac.com
>      April A. Carr, BPR No. 029092
>      acarr@wmbac.com
>
>      Post Office Box 900
>      Knoxville, Tennessee 37901-0900
>      (865) 215-1000
>
>      *Attorneys for Plaintiff Auto-Owners Insurance Company*